UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TRYONE DEXTER STEWART, JR.,

        Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant,

_____/

Case No.  1:15-CV-0147

HON. ROBERT J. JONKER

## **OPINION**

This is a social security action brought under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner). Plaintiff Tryone Stewart seeks review of the Commissioner's decision denying his claim for supplemental security income (SSI) under Title XVI of the Social Security Act.

## **STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health & Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1998). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a *de novo* review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged

with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 49 years of age on the date of the Administrative Law Judge's (ALJ) decision. (PageID.34, 55.) He attended special education classes, completed high school, and was previously employed as a custodian. (PageID.83, 372.) Plaintiff previously applied for benefits on March 16, 2006, that resulted in an unfavorable decision by an ALJ on August 26, 2009. (PageID.90, 93.) Plaintiff did not appeal that decision, and accordingly it became the Commissioner's final decision in the matter. In the instant case, Plaintiff applied for benefits on

May 14, 2012. (PageID.251–56.) Plaintiff alleged that he had been disabled since October 1, 2007, due to mild cognitive impairment, depression, back pain, leg pain, mild retardation, and back problems. (PageID.132.) Plaintiff's application was denied on July 3, 2012, after which time he requested a hearing before an ALJ. (PageID.158–64.) On July 18, 2013, Plaintiff appeared with his representative before ALJ William Reamon for an administrative hearing with testimony being offered by Plaintiff and a vocational expert (VE). (PageID.52–88.) In a written decision dated August 21, 2013, the ALJ determined that Plaintiff was not disabled. (PageID.34–51.) On December 16, 2014, the Appeals Council declined to review the ALJ's decision, making it the Commissioner's final decision in the matter. (PageID.24–29.) Plaintiff subsequently initiated this action under 42 U.S.C. § 405(g).

## ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R.

---

[1] 
1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. § 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. § 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. § 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. § 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. § 404.1520(f)).

§§ 404.1520(a), 416.920(a).  The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining the claimant's residual functional capacity (RFC).  *See* 20 C.F.R. §§ 404.1545, 416.945.

Plaintiff has the burden of proving the existence and severity of limitations caused by his impairments and that he is precluded from performing past relevant work through step four. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).  At step five, it is the Commissioner's burden "to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.*

ALJ Reamon determined Plaintiff's claim failed at the fifth step of the evaluation.  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his application date.  (PageID.39.)  At step two, the ALJ determined Plaintiff had the following severe impairments: (1) degenerative disc disease of the lumbar spine (disc bulging, stenosis, facet hypertrophy); and (2) a cognitive disorder.  (PageID.39.)  At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments.  (PageID.39–41.)  At the fourth step, the ALJ found that Plaintiff retained the RFC based on all the impairments:

> to perform a range of light work as defined in 20 CFR 416.967(b) of the Regulations.  Claimant is able to lift and carry a maximum of twenty pounds occasionally and a maximum of ten pounds frequently.  Claimant can climb ramps and stairs frequently, but can never climb ladders, ropes, or scaffolds.  He can stoop, crouch, and crawl occasionally.  There can be no more than concentrated exposure to extreme cold and heat.  Claimant can perform simple, routine, and repetitive tasks in a work environment free of fast-paced production requirements, involving only simple work-related decisions with few, if any, workplace changes.

(PageID.41.)  Continuing with the fourth step, the ALJ determined that Plaintiff was unable to perform any of his past relevant work.  (PageID.44–45.)

At the fifth step, the ALJ questioned the VE to determine whether a significant number of jobs exist in the economy which Plaintiff could perform given his limitations.  *See Richardson*, 735 F.2d at 964.  The VE testified that there existed approximately 8,300 jobs in the state of Michigan and 80,000 jobs in the nation such as a machine tender, inspector, and parts polisher that an individual similar to Plaintiff could perform.  (PageID.84–85.)  This represents a significant number of jobs.  *See Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988); *McCormick v. Sec'y of Health & Human Servs.*, 861 F.2d 998, 1000 (6th Cir. 1988).

Accordingly, the ALJ concluded that Plaintiff was not disabled at any point from March 30, 2012, (the date of application) through August 21, 2013, (the date of the decision). (PageID.46.)

## DISCUSSION

Plaintiff's Statement of Errors presents the following claims:

1. The ALJ committed reversible error by adopting the previous decision in this case;

2. The ALJ committed reversible error by not finding that Plaintiff met Medical-Vocational Listing 12.05;

3. The ALJ committed reversible error by improperly weighing the evidence, including relying on improper evidence from an unacceptable medical source to support his decision; and

4. The ALJ committed reversible error by failing to consider whether Plaintiff would be entitled to benefits as of his 50th birthday.

(PageID.494.)  The Court will discuss the issues below.

**1.**

At step 3, ALJ Reamon found Plaintiff did not meet the necessary requirements to satisfy Listing 12.05(c). ALJ Reamon noted the ALJ in Plaintiff's prior application for benefits "did not find that section met or medically equaled and no new evidence concerning the claimant's intellectual functioning has been submitted regarding the current claim. The undersigned is persuaded and convinced of the prior decision's rationale . . . and adopts [the] same concerning section 12.05C." (PageID.41.) Taking Plaintiff's first two claims together, Plaintiff argues that the ALJ erred both in finding that his mental impairments do not meet the criteria of Listing 12.05(C), and in using the doctrine of *res judicata* as the basis for making that finding. (PageID.495–98.)

Satisfying all the criteria of Listing 12.05(C) is one way a claimant may demonstrate that he suffers from an intellectual disability under the Listing of Impairments, so as to qualify for benefits. In order to satisfy the requirements of Listing 12.05(C), a claimant must show that:

> he experiences "significantly subaverage general intellectual functioning with deficits in adaptive functioning [that] initially manifested during the developmental period" (i.e., the diagnostic description); (2) he has a "valid verbal, performance, or full scale IQ of 60 through 70"; and (3) he suffers from "a physical or other mental impairment imposing an additional and significant work-related limitation of function."

*West v. Comm'r of Soc. Sec.*, 240 F. App'x 692, 697–98 (6th Cir. 2007) (quoting 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05(C)). It is Plaintiff's "burden at step–3 of the sequential analysis to demonstrate that [his] impairment met or equaled all the requirements of listing 12.05." *Carter v. Comm'r of Soc. Sec.*, 1:10–CV–804, 2012 WL 1028105 (W.D. Mich. Mar. 26, 2012) (citing *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 855 (6th Cir. 2010)). An impairment that only meets some of the criteria does not satisfy Plaintiff's burden. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

As noted, whether Plaintiff meets the requirements of Listing 12.05(C) was previously addressed by ALJ Ritter in his prior unfavorable decision that denied Plaintiff benefits. (PageID.96–97.) In that decision, ALJ Ritter found that Plaintiff did not meet the criteria of Listing 12.05, primarily based on the fact that he did not meet the element requiring "significantly subaverage general intellectual functioning with deficits in adaptive functioning that initially manifested during the developmental period." 20 C.F.R. Pt. 404, Subpt. P, A pp. 1, § 12.05(C). Specifically, ALJ Ritter noted that while Plaintiff tested with a full scale IQ of 61 and 66, his work history did not show a deficit of adaptive functioning. (PageID.97.) ALJ Ritter relied on the opinion of Plaintiff's social worker who noted Plaintiff's "receptive ability is best when he is given repetitive instruction," and noted that Plaintiff "earned substantial gainful activity for five straight years from 1997-2001 and since for over two years beginning in September 2005, which shows adaptive functioning with his mental impairment, and thus does not meet listing 12.05C." (PageID.97.)

Plaintiff's ability to perform substantial gainful activity is relevant to whether he had the deficits in adaptive functioning necessary to meet listing 12.05's diagnostic description. *See Cheatum v. Astrue*, 388 F. App'x 574, 577 n.3 (8th Cir. 2010); *see also Gulch v. Comm'r of Soc. Sec.*, No. 1:11–cv–21, 2012 WL 651731, at * 7 (W.D. Mich. Feb. 28, 2012) ("[T]he fact that Plaintiff maintained employment throughout much of her adult life is inconsistent with the conclusion that she is [intellectually disabled]" and "indicates that Plaintiff did not experience deficiencies in adaptive functioning prior to age 22, or thereafter for that matter."). Moreover, Plaintiff testified that his employment ended after he developed physical difficulties, suggesting that

his termination came about at least in part due to his inability to perform the physical duties of the position. (PageID.77–78.)

Though ALJ Reamon does not expressly indicate his intent to rely on *res judicata* in the section devoted to the step three analysis, under the rule of *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837 (6th Cir.1997), and its progeny, the ALJ was required to "adopt and be bound by the finding of [the] claimant's residual functional capacity *or other findings required at a step of the sequential evaluation process*." *Caudill v. Comm'r of Soc. Sec.*, 424 F. App'x 510, 514 (6th Cir. 2011) (emphasis added); *see Miller v. Comm'r of Soc. Sec.*, No. 12–3644, 2013 WL 1705026, at * 1 (6th Cir. Apr. 22, 2013); *Haun v. Comm'r of Soc. Sec.*, 107 F. App'x 462, 464 (6th Cir. 2004). The ALJ could not "redetermine the findings of a claimant's residual functional capacity or other issues previously determined in the absence of new and additional material evidence or changed circumstances." *Caudill*, 424 F. App'x at 514.

Plaintiff argues that the doctrine should not apply because Plaintiff was not represented by counsel during his prior application, and that the two ALJ's were biased against Plaintiff. (PageID.494–96.) Plaintiff's argument that his non-attorney representative provided ineffective assistance is patently meritless. It is well established that there is no constitutional right to counsel at an administrative hearing on a claim for social security benefits. *See Goldburg v. Kelly*, 397 U.S. 254, 270–71 (1970). Claimants may represent themselves or be represented by attorneys or non-attorneys. 20 C.F.R. §§ 404.1705, 416.1505; *see Kidd v. Comm'r of Soc. Sec.*, 283 F. App'x 336, 345 (6th Cir. 2008); *Nichols v. Comm'r of Soc. Sec.*, No. 1:09–cv–1091, 2010 WL 5178069, at *6 (W.D. Mich. Nov. 18, 2010). Nor can Plaintiff demonstrate that he was prejudiced by lack of counsel. Plaintiff claims that he meets the requirements of Listing 12.05(C). However, as noted

above, Plaintiff's history of substantial gainful activity demonstrates a lack of a deficiency in adaptive functioning, and that is fatal to his claim whether or not he was represented by counsel.

Finally, Plaintiff's argument that the two ALJs are biased against him must fail. The record contains no evidence that either ALJ was "biased" against Plaintiff. Plaintiff presents nothing approaching the convincing evidence of actual bias necessary to overcome the presumption that the ALJ was impartial. The ALJ is presumed to have exercised his powers with honesty and integrity, and Plaintiff has the burden of overcoming the presumption of impartiality "with convincing evidence that a risk of actual bias or prejudgment is present." *Collier v. Comm'r of Soc. Sec.*, 108 F. App'x 358, 364 (6th Cir. 2004) (citing *Schweiker v. McClure*, 456 U.S. 188, 196 (1982), and *Navistar Int'l Transp. Corp. v. EPA*, 921 F.2d 1339, 1360 (6th Cir.1991)). The Court finds no evidence that the ALJ was biased against Plaintiff, much less the convincing evidence of actual bias that is necessary to overcome the presumption of impartiality. Accordingly, the ALJ did not err in applying the doctrine of *res judicata* to the Step 3 analysis, and Plaintiff's first two claims of error are rejected.

**2.**

In Plaintiff's third claim of error, Plaintiff argues the ALJ erred in his treatment of the medical opinion of Dr. Chiniya Thapa, M.D., Plaintiff's treating physician, as well as an opinion from Mr. Ethan D. Wheeler, who Plaintiff characterizes as his caseworker, and appears to have represented Plaintiff in his prior application for benefits. (PageID. 498–99.) The Court disagrees.

On April 3, 2013, Dr. Thapa filled out a two-page worksheet regarding Plaintiff's RFC. Among other things, Dr. Thapa opined that Plaintiff could not work at any job, and that this limitation was lifelong. (PageID.434.) Dr. Thapa also opined that Plaintiff had specific limitations

9

that included being able to only occasionally lift and carry twenty five pounds, and could only stand or walk less than two hours in the workday. (PageID.434.) Plaintiff claims the ALJ failed to assign proper weight to this opinion.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and his maladies generally possess significant insight into his medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375–76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527). It appears undisputed that Dr. Thapa qualifies as a treating physician.

The deference accorded to such opinions is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health & Human Servs.*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health & Human Servs.*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller*, 1991 WL 229979 at *2 (citing *Shavers*, 839 F.2d at 235 n.1); *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286–87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any

subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)). Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Id.* at 376–77.

If the ALJ affords less than controlling weight to a treating physician's opinion, the ALJ must still determine the weight to be afforded such. *Id.* at 376. In doing so, the ALJ must consider the following factors: (1) length of the treatment relationship and frequency of the examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) other relevant factors. *Id.* (citing 20 C.F.R. § 404.1527). While the ALJ is not required to explicitly discuss each of these factors, the record must nevertheless reflect that the ALJ considered those factors relevant to his assessment. *See, e.g.*, *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 F. App'x 448, 450 (5th Cir. 2007).

The ALJ gave Dr. Thapa's opinion no weight. (PageID.44.) The ALJ noted Plaintiff was very insistent that Dr. Thapa complete the worksheet, and did not want to undergo an assessment to first determine his functional capacity. Indeed Dr. Thapa's treatment notes from March 20, 2013, show that Plaintiff insisted Dr. Thapa fill out the paperwork, and when Dr. Thapa requested Plaintiff attend therapy first, Plaintiff declined to do so and said he had no time to attend therapy. The record shows Dr. Thapa relented and filled out the form, apparently only after positing the form's questions

11

to Plaintiff. (PageID.445–47.) All this suggests that Dr. Thapa believed Plaintiff needed to attend therapy first in order to render an accurate opinion, and did not really believe Plaintiff was as impaired as was documented on the worksheet. The ALJ also noted that the opinion was inconsistent with Dr. Thapa's treatment notes. (PageID.44.) On January 4, 2013, Dr. Thapa noted that Plaintiff had a mild disc bulge at the L5-S1 Level, as well as mild DJD (degenerative joint disease) in his lower back. (PageID.440.) Despite Plaintiff's reports of knee pain, an X-ray was normal. (PageID.448.) Plaintiff had back and joint pain, but had no joint swelling, muscle weakness, or neck pain. (PageID.449.) On April 3, 2013, Plaintiff's cervical, thoracic, and lumbar spine all had normal mobility, curvature, and had no tenderness. Plaintiff complained of pain in his leg, but was able to walk to the exam table. (PageID.450.) All this provides substantial evidence that Plaintiff was not as impaired as that found by the ALJ. Accordingly the ALJ provided good reasons, supported by substantial evidence, for giving Dr. Thapa's opinion less than controlling weight.

Plaintiff claims, however, that the ALJ was required to give Dr. Thapa's opinion more weight than the opinion of Mr. Ethan Wheeler because Dr. Thapa is a physician and the qualifications of Mr. Wheeler are unknown. (PageID.498.) Plaintiff is incorrect.

On May 20, 2013, Mr. Wheeler opined that Plaintiff was mildly limited in his ability to understand, remember, and carry out simple instructions, and moderately impaired in his ability to do so with complex instructions. (PageID.455.) Though Mr. Wheeler stated Plaintiff had mild mental retardation, he stated that Plaintiff had no limitation in his ability to interact appropriately with the public, supervisors, and co-workers. He also could respond appropriately to work situations and changes in a routine work setting. (PageID.456.) The ALJ gave the opinion "some weight,"

noting that while Plaintiff frequently visited Mr. Wheeler, it did not appear Mr. Wheeler was a trained mental health professional. As such, Mr. Wheeler qualified only as an "other source." 20 C.F.R. § 416.913(d). Opinions expressed by other sources, such as Mr. Wheeler, are not entitled to any deference. *See, e.g.*, *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007). Instead, the ALJ is simply required to consider such opinions and accord such weight he finds appropriate. *See, e.g.*, *Engebrecht v. Comm'r of Soc. Sec.*, 572 F. App'x 392, 397–98 (6th Cir. 2014). The ALJ considered the opinion in question and afforded it some weight for reasons supported by the record.

Moreover, as the Commissioner correctly points out, Social Security Rulings expressly contemplate situations where, as here, opinions from a non-acceptable source may trump that of an acceptable source. SSR 06-03P, Titles II & XVI: Considering Opinions & Other Evidence from Sources Who Are Not "Acceptable Med. Sources" in Disability Claims; Considering Decisions on Disability by Other Governmental & Nongovernmental Agencies, 2006 WL 2329939 (S.S.A. Aug. 9, 2006) ("[D]epending on the particular facts in a case, and after applying the factors for weighing opinion evidence, an opinion from a medical source who is not an acceptable medical source may outweigh the opinion of an acceptable medical source, including the medical opinion of a treating source.") (internal quotations omitted). SSRs, or Social Security Rulings, "are binding on all components of the Social Security Administration" and "represent precedent final opinions and orders and statements of policy and interpretations" adopted by the agency. 20 C.F.R. § 402.35(b)(1). For those reasons, the ALJ did not err in his treatment of the opinions in the record. Accordingly, Plaintiff's third claim of error is rejected.

**3.**

Plaintiff finally claims that because he was approaching his fiftieth birthday at the time of the ALJ's decision, the ALJ should have applied the Medical Vocational Guidelines ("Grids") to find that he was disabled.

The Grids consider four factors relevant to a particular claimant's employability: (1) residual functional capacity, (2) age, (3) education, and (4) work experience. 20 C.F.R., Part 404, Subpart P, Appendix 2. Social Security regulations provide that "[w]here the findings of fact made with respect to a particular individual's vocational factors and residual functional capacity coincide with all the criteria of a particular rule, the rule directs a conclusion as to whether the individual is or is not disabled." 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00. In other words, a claimant may be awarded benefits if he satisfies the requirements of one of the particular rules correlating to a finding of disability. *See Russell v. Comm'r of Soc. Sec.*, 20 F. Supp. 2d 1133, 1134 (W.D. Mich. 1998).

The ALJ found that Plaintiff possessed the following vocational factors: (1) was limited to light work; (2) was a younger individual aged 18-49;[2] (3) possessed at least a high school education; and (4) had no previous work skills that were transferrable. (PageID.44–45). According to the grids, an individual possessing these particular vocational factors is considered "not disabled." See 20 C.F.R., Part 404, Subpart P, Appendix 2, § 202.20. Because, however, the ALJ determined

---

[2]The ALJ erred in using Plaintiff's age as of the date of Plaintiff's disability application. (PageID.45.) The relevant time for determining a claimant's age in applying the regulations is not the alleged onset date, but rather the date of the ALJ's decision. *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 780 (6th Cir. 1987) ("the claimant's age as of the time of the decision governs in applying the regulations"). The ALJ's error here is harmless, however, as the Plaintiff's age at the date of decision of 49 is still classified as a younger individual. See 20 CFR § 416.963(c).

Plaintiff possessed additional nonexertional impairments, the ALJ used § 202.20 as a framework and consulted a VE as to whether jobs exist in the economy that someone similar to Plaintiff could perform. The VE testified that there were. (PageID.84–85). Relying on the VE's testimony, therefore, the ALJ found that Plaintiff was not disabled. (PageID.45).

Plaintiff argues, however, that because he turned fifty less than four months after the ALJ's decision, the Court should follow other decisions that apply the next higher age category in such borderline cases. (PageID.499–500.) Plaintiff suggests Rules 201.09 or 201.12 as proper rules that would lead to a finding Plaintiff is disabled. (PageID.499.) The flaw in Plaintiff's argument is that the rules suggested fall under the Grid rules for an RFC of sedentary work. Even if the Court were to adopt the higher age category, as Plaintiff suggests, Plaintiff falls under Grid Rule 202.13, which still directs a finding of not disabled. See 20 C.F.R., Part 404, Subpart P, Appendix 2, § 202.13. Plaintiff does not argue that his RFC is unsupported by substantial evidence, nor does the Court find a basis for so determining. Even if Plaintiff's request to shift the age category is granted, he cannot succeed. Accordingly, the final claim of error is rejected.

## CONCLUSION

For the reasons set forth herein, the Commissioner's decision will be **AFFIRMED.** A separate judgment shall issue.

Dated:      March 14, 2016                /s/ Robert J. Jonker
                                          ROBERT J. JONKER
                                          CHIEF UNITED STATES DISTRICT JUDGE